Yvonne Walsh v. Teltech Systems, Inc.  Richard Reiling, Co-Counsel, Todd Pomerleau And I wanted to start this morning to discuss the issue which we feel that the district court didn't discuss at all, and that is the illegal tape recording of the calls at issue. As this Court's, I'm sure, aware, in Massachusetts it's illegal to secretly intercept the calls of another. As the Supreme Judicial Court has stated in the case of Commonwealth v. Hyde in year 2011, which involved a defendant who secretly recorded calls or a conversation between he and police officers, in Massachusetts the Supreme Judicial Court has declared that it is the intent of the legislature to strictly prohibit all secret audio recordings when made without the knowledge or permission of the other party. In this case, Teltech has admitted that the calls in question were recorded, Teltech has admitted that the calls were recorded without the appellant's knowledge. Does the record reflect, physically, how is the recording made? You used the passive voice in saying the calls were recorded, but what happens to the recording? Your Honor, in this case, if we look at the testimony of Johnny DeLorenzo, who recorded the calls, she says she didn't elect to record the calls at all. So the evidence before the trial court was that neither the appellant nor the person who is alleging, or I'm sorry, that placed the calls herself, recorded the calls. In fact, Ms. DeLorenzo testifies that in the event that she had known that the calls would have been recorded, she would not have elected to do so. That was the state of the factual dispute that was before the district court. So we actually have a situation where there's a factual issue as to whether anyone consented to the telephone or to the recording of these calls themselves. Can you explain something to me? Did this recording occur automatically? No, Your Honor, it did not. Somebody had to make a decision to record. We don't know how because Ms. DeLorenzo testified that she did not elect to make the recording either. That neither my client, the appellant, nor the person who placed the call elected to have this call recorded. And that's the state of the evidence, and admittedly, Ms. DeLorenzo's testimony is all over the place to a certain degree. She testified in connection with the advertising, for example, that she didn't recall exactly what she saw. At certain points during the course of her testimony, she asserted her right under the Fifth Amendment. But the facts that were before the trial court on summary judgment were that neither party consented to this call being recorded, but yet we have the call recorded. And in the testimony from the owners of Spoof Card, we know why that's the case. That's how this product works. As the owner of Teltec testified, they never obtained the consent of the person being spoofed. Otherwise you're not able to make these clandestine calls and the utility of the product is destroyed. So in Massachusetts, even though Teltec has made hundreds of thousands of dollars selling this product into Massachusetts, has specifically targeted Massachusetts in its advertising, every time a Spoof Card call is recorded, it is in violation of a criminal act in this state. What about causation and damages on the recording? Your Honor, and that calls for an analysis of 93A, because as we've cited in our brief, a violation of Chapter 272, Section 99 is an invasion of privacy, an invasion of privacy is actionable under 93A. And in connection with the damages issue, damages are defined in Massachusetts under 93A as the invasion or elimination of any legally protected right. Here's where my problem is. That's Liardi, I think is your 1985 case that you rely on for that. As I look at Massachusetts law, there have been subsequent cases by the SJC saying that's not quite so. Does your position on damages assume that we would hold that the mere violation of a statutory right under 93A triggers the $25 award? No, it doesn't, Your Honor, because my client testified that she suffered emotional distress. From the recording? Yes, Your Honor. Not only in regards to... But didn't she just say that's because she thought it was posted on the website or something? Well, the evidence is that these calls that are recorded without the knowledge of the people being called are placed into a randomizer and used to advertise this product. So my client testified that she suffered emotional distress not only from the fact that the calls were made, these terrible calls threatening her with sexual assault, but also based on the fact that the calls themselves were tape recorded. But we don't know, Your Honors, how the district court would have addressed that issue because the district court didn't address it at all. There's no reference in the 10-page decision issued by the district court to even the statute itself. There's not a reference to Chapter 272. There's no mention in the decision itself that the calls were recorded. So although this claim is mentioned in the complaint, discussed throughout the discovery in every deposition, argued at length as part of the motion for summary judgment, and during oral arguments, it's completely overlooked in the decision. Is there a separate civil remedy under 272? There is, Your Honor. And you're not pursuing that? We're pursuing only the claim under 93A, Your Honor. Is there any authority, what authority should we be looking to to figure out whether a statute that has a reticulated remedial provision, including civil ones, nonetheless can be brought under 93A? Your Honor, I think that's a case that would be specifically instructive on that point. It is a case rendered by the Middlesex Superior Court in the Heffernan decision in year 2009, which we cite on page four of our reply and in our brief itself. That's the clearest authority we have for Massachusetts law, that there would be things as a Superior Court decision? Your Honor, I chose that case because it specifically involves not only this statute, but this statute constitute, a violation of this statute, constituting an invasion of privacy itself. So that's discussed in that opinion in some length, and we think that that's the case that is the closest mark to our case and actually addresses specifically some of the issues involved. Obviously, we primarily see Chapter 272 in the criminal context, as opposed to the civil context. So we think that the judge's decision in the Heffernan case is instructive in that regard. Was Heffernan a 93A case? It was not, Your Honor. It was an invasion of privacy. So there's no mass authority that you can bring a 93A action for a 272 violation? Not to say that there's any authority going directly the other way, but there's just a blank slate on that question. It is a blank slate, but in connection with the invasion of privacy, we have the case in year 2009, and there are also very few, but some other decisions. In that invasion of privacy case, though, was there an underlying statute with its own civil remedial scheme? In the Heffernan case? The invasion of privacy case that you're talking about, is that the Heffernan one? Yes, Your Honor. Oh, I see. So you don't have even an invasion of privacy chapter 93A case? Oh, no, Your Honor. In regards to a 93A case, we cite the case of Ellis v. Safety Insurance Company, which is a 1996 case, which specifically ties invasion of privacy to 93A actions, and that's cited in the brief. In that case, the underlying invasion of privacy that occurred there, was there an underlying civil remedial scheme? The tort of invasion of privacy? Just the tort of invasion of privacy. If we were to find for you, do we have to find for you on the basis of the recording? Well, Your Honor, we've talked in our brief in connection with the advertising, and we've alleged in the brief that there is, at the very least, circumstantial evidence that Jolene DiLorenzo saw the advertising, saw that this product was advertised to tape record without permission, saw that it was advertised in order to make the very kind of harassing call that was made in this case, and the only testimony that we have from her on that point is inconsistent at best. At one point during the course of her deposition, during my questioning of her, she admits that she doesn't remember what she saw. But what we do know is that she used this product in the exact manner that this product was advertised on the website, and for the exact purposes that were specifically highlighted by Spoof Card for its usage. So we talk in some length in the brief about the advertising element of it, but I did want to spend my time this morning addressing the point that the district court did not address at all, and that was in connection with the tape recording issue. And the advertising, the testimonial portion, that's the only advertising that you've, or not the only, but that is the advertising that you have in mind, is that testimonial? Yes, Your Honor, and the advertising evidence that indicates that you can make a call, tape record it without the other party's permission, which we also argue before the court. I understand that's on the recording side. Yes, and there's advertising that. And could you just say one thing about the terms of service and what relevance that has? I thought there was a terms of service provision that says when you click on, I'm not going to do anything illegal with this product. Your Honor, I can go very briefly on that. That is not a waiver of liability blanket statement that you will not use this for any illegal purpose. When the tape recording of any call without the permission of the other side, which happens each and every time the Spoof Card product is used, is a violation of the criminal statute You can't immunize yourself from liability by putting a boilerplate blanket statement like that in a terms of service. Thank you, Mr. Brock. Thank you, Your Honors. Good morning, Your Honors. I'm Mark DelBianco for the Appellee Teletext Systems. I'd like to address first the question that was initially raised by Judge Gallardo about the recordings. The undisputed evidence in this case showed that the recording could only be made of a call by the calling person pressing a particular button in the system when they called in to place a spoofed call. So when they press that button, your client then records the call? The machines record the call. But it's your client's machines, it's not the person's phone. That's correct, Your Honor. So your client is recording a phone call when one person in that conversation has instructed to do so without any effort to even seek the consent of the other person. Isn't that a slam dunk? No, Your Honor. Why not? Because the provision of the ability to record a call is not by itself a violation of Massachusetts law. Sure. If they just gave the ability and didn't record the call, I agree with you. If you were selling tape recorders, it would be one thing, but your service records them. That's correct, Your Honor. You make it easy to record them because all the person has to do is push a button and there isn't an admonition at that point in the state of Massachusetts that it is illegal to record a call without the consent of both parties. That's correct, Your Honor. Because there is simply no way of knowing where a call is being placed from or to. You cannot tell. On any telephone network, you cannot tell. So if you get a note right now in front of you from someone in this courtroom on sign saying, record these proceedings, and you turn down your tape recorder and record it without seeking the consent of the rest of us here, you'd be in a sticky wicket, wouldn't you? I believe that I would, Your Honor. And how is it any different what your client has done? It gets a signal from a button pressed by one person to a two-party call, and it then records it. Your Honor, that is a different situation in that my client is engaged in interstate commerce. Yes, but you know that there are states in the country, I think more than Massachusetts, that have this rule. And so once you make it easy to do it and you say, well, I don't know where the call is coming from, but you have some understanding where you sell your product, you know how much you sell in Massachusetts, you know that recording calls without two-party consent is illegal, don't you have some responsibility? No, Your Honor. There is no way to tell where a call is being made from, where anyone is going to use minutes that they've purchased on the system. There is simply no way that you could do that. How is that a defense? No. Your Honor, that is not a defense. You know you're recording a call. You just told us you have no way of knowing if you have consent. That's correct. So what's your defense? The defense is, in this case, it doesn't matter, Your Honor, because there is no causation under Section 93. Well, now you're not talking about whether there's a violation. You're talking about whether there's causation and harm. But we're having trouble, I'm having trouble understanding how this isn't just a flat-out violation of the law. And maybe even if it is, there's no causation or damages and you win, but I still haven't heard any reason at all how your client can possibly claim that it can record calls knowingly without having any idea whether it has the consent of all the people on the call. Your Honor, I think the key word there is knowingly. It knows it doesn't have the consent. No. Your Honor, it does not know that. Well, it doesn't know that it has consent. It knows that people can use its product to violate the law. It does not have any knowledge of specific violations. No, but it commits a recording without consent of both parties, without knowing it has consent of both parties. That's got to be true, right? Does it know it has consent of both parties when it records? It has no knowledge whether one party or two parties have consent. That's a no. At the time that this incident occurred, which I understand was some years ago, is there any evidence on the record which indicates that you advertised that one, before recording a call, had to know whether that was permissible in the state where this was being done? Yes, Your Honor. There was specific information on the website where you went to sign up to purchase the minutes. Is that in this record? Yes, Your Honor, it is. The specific terms of service are cited in the affidavit of Mayor Cohen that was attached to the motion for summary judgment. I believe it is, it's approximately page, I can find the citation. It's A140. It contains the terms of service and there's a particular provision that says if you are going to use this recording capability, you need to check to make sure that it's legal not only in your state, but in the state in which the person you are called is located. So if I'm a private eye and I come to your house and you ask me to tape a call or a conversation, you're going to have that afternoon with Joe Blow. I'm off the hook if I say to you, did you get Joe's consent? And you say, yeah, but I never get the consent of Joe?  But that's exactly what happens here. You're the private detective. The DeLorenzo's there are making the call and you're now telling us you read your agreement as including a representation by users that they will first obtain consent. That's exactly the hypothetical I just asked you. Your Honor, I think that our argument does not matter. The weight of our argument does not matter whether we have actually violated the statute or not. The fact is if I concede, and I'm not, but if I concede that this would be a violation of the statute, then we move to the next step and that is, is there any causation in this case? And the answer to that is no. Can I ask if there's a prior step just so I understand how the law works here? The statute we're talking about is 272, right? Chapter 272 is that? The underlying statute. Then there's a question of causation and damages, but this is a 93A action. And so there's a prior question, which is does 93A state a cause of action for a violation of Chapter 272? Your Honor, I don't personally believe it does having looked at the case law. There is no case cited in the brief filed by Ms. Walsh's attorneys that says that. The closest they come is the syllogism that an invasion of privacy, excuse me, a violation of 272 is an invasion of privacy. And then in the Ellis case that Mr. Reiling mentioned a minute ago, there was the statement in footnote 15 that a violation, that an invasion of privacy may, the court didn't say was, said may be a violation that's actionable under 93A. So it's an unclear question under Massachusetts law? That's correct. Okay. And you concede the district court never addressed any of this? That is correct, Your Honor. So is there any reason why we wouldn't have the district court on remand now address it? It was properly raised. It's a close question. It's been completely unaddressed. Is there any reason not to have the district court address it? I think that the question is irrelevant, Your Honor, in the sense that it does not need to be addressed. This court does not need to remand the case to the district court because it can find that summary judgment is warranted on any ground supported by the record. And here you have a ground that is independently sufficient, as the case law says. And that ground is that there is no causation and no loss. What about, as I understand it, the response to what you just said is that the plaintiff testified that when she learned that recordings were made and may be cycled as part of the advertising, in other words, her abuse being that upset her and caused her emotional distress. Your Honor, I see no citation to that point anywhere in the brief or the record. What she suffered was emotional distress and other harm in 2009. She did not learn that these recordings even existed until 2012 or 2013. The record is a little unclear on that. But there is no way that a harm caused in 2009, excuse me, that a discovery of a recording in 2012 or 2013 could cause a harm that occurred in 2009. So you're telling us there's nothing in the record that links the discovery in 2012 or 2013 whenever it was about the recording to any added emotional distress? That's correct, Your Honor. And if you look at the briefs for Ms. Walsh, there's no citation to anything like that. Could you address what I understood was the other 93A theory, which is that you were marketing this product in a way that induced or encouraged or supported the notion that it could be used for harassing conduct through the testimonials page? Yes, Your Honor. And that that makes it an unfair product  to use the product that way even though it had other legitimate uses? Yes, Your Honor. What's wrong with that 93A theory? There's nothing wrong with that theory except the facts. The facts showed, the only way that would work is if Ms. Walsh had, excuse me, Jeanine Dean Lorenzo had seen those testimonials. If that were the case, we'd have a different case. Can I just, I'm just trying to figure out whether that makes entire sense. So if a product is, the whole marketing campaign is to use it for harassing conduct. No, Your Honor. No, I'm saying if. Yeah, if. But there are some legitimate uses. I would think there might be an argument that that's an unfair product and it's reasonably foreseeable that somebody is going to use it in that bad way and I needn't prove that the particular person who used it actually saw that advertising. Are you saying that in any case, the only way an advertising case of this kind can work is if you can prove that the person who used the product actually saw that advertising? Yes, Your Honor. That is what we're saying. That's, I believe, what Ms. Walsh has conceded because the entire complaint and the briefing has been based on the assumption that Ms. Walsh had to be aware of the testimonials in order for a 93A claim to lie. The users had to be. Yeah. I'm sorry. Yeah. Mrs. DiLorenzo. Well, wasn't there evidence that she, in fact, did see this advertising and that's why she bought the product? Absolutely not, Your Honor. In fact, I can give you the citations. She testified twice that she couldn't even remember if she went to the website. So you have the initial. So the testimony that she just, out of the blue, bought this product and figured out how to use it on her own for the purposes of harassing the neighbor. That is exactly what the evidence showed, Your Honor. And the record's going to show that. Yes, Your Honor. But someone told them about the product. Someone told her about the product, yes. But she figured out how it could be used on her own. Yes. And those people who told her about it suggested it might be good for this type of use? No, Your Honor. If this is addressed in our brief with some citations, the people that told her about it, in fact, all they were doing was calling each other up at a party and showing her that you could use somebody else's number. So that, yes, they were doing that, but there was absolutely nothing illegal about that. That is absolutely permissible under federal and state law. Thank you, Mr. DelBianco. The Court will now take a vote.